**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **IGNACIO CHAVEZ,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-424-KC** |
| | § | |
| **CHARISMA EDGE, *Warden*, FCI La Tuna,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Ignacio Chavez, Federal Prisoner Number 17410-509, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is dismissed because he failed to exhaust his administrative remedies.

## BACKGROUND

Chavez is a 63-year-old prisoner confined at the La Tuna Federal Correctional Institution (FCI La Tuna) in Anthony, Texas, which is within the territorial jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 17410-509, last visited April 23, 2026); 28 U.S.C. § 124(d)(3). His projected release date is October 22, 2031.

Between April and July of 2020, Chavez conspired with others to distribute methamphetamine in Chavez County, New Mexico. *United States v. Chavez*, 5:20-cr-02040-RB (D. N.M.), Plea Agreement, ECF No. 337 at 5. Chavez was arrested and placed in pretrial detention on November 16, 2020. *Id*., Arrest, ECF No. 278. He pleaded guilty to (1) conspiring to distribute more than 50 grams of methamphetamine, (2) distributing more than 50 grams of methamphetamine, and (3) using a communication facility to further the commission of a drug trafficking crime. *Id.*, J. Crim. Case, ECF No. 451. He was sentenced to 168 months' imprisonment on August 30, 2022.

In his petition, Chavez alleges Respondent Warden Chrisma Edge has not properly calculated his Good Time Credits (GTCs), First Step Act Earned Time Credits (FTCs), and Second Chance Act "Credits." Pet'r's Pet., ECF No. 1. He asks the Court to issue an order directing Warden Edge to "properly provide all Good Time, First Step Act, and Second Chance Act Credits" to which he believes he is entitled.

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

The Fifth Circuit has long held that the Bureau of Prisons (BOP) should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir.

1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances.

Chavez does not claim that he exhausted his BOP administrative remedies or that any exception to the exhaustion requirement applies. *See* Pet'r's Pet., ECF No. 1. His prison records show he has not "filed any administrative remedies since arriving in BOP custody." Gov't's Resp., Ex. 3 (Decl. of Michael Caldwell), ECF No. 6-3 at ¶ 10. He argues that he need not exhaust because habeas corpus under § 2241 is a constitutional right and an exhaustion requirement would abrogate his constitutional right. Pet'r's Pet., ECF No. 1 at 5. He is wrong. *Setser*, 607 F.3d at 133.

Consequently, Chavez "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

The Court finds that Chavez has failed to exhaust his administrative remedies or carry his

burden of proving the futility of an administrative review. *Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Chavez had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

### B. Alternatively, Chavez's Petition Lacks Merit

Chavez alleges Edge has not properly calculated his Good Time Credits (GTCs), First Step Act Earned Time Credits (FTCs), and Second Chance Act Credits. Pet'r's Pet., ECF No. 1. He specifically argues that he should have earned FTCs between November 15, 2020, and November 15, 2022, or April 15, 2020, and July 14, 2025. *Id.* at 1, 3.

Chavez received 652 days of jail credit for the time he spent in detention before his sentencing. Gov't's Resp., Ex. 2 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶¶ 6, 7; 18 U.S.C. § 3585(b)(1). Without the application of any GCTs or FTCs, his full prison term would expire on November 16, 2034.

Chavez was not eligible to earn GTCs while in official detention before his sentencing on August 30, 2022. 18 U.S.C. § 3624(b)(1) ("a prisoner who is serving a term of imprisonment of more than 1 year … may receive credit toward the service of the prisoner's sentence"). He began earning 54 days of GTCs for each year of his sentence once he started serving his sentence. *Id*. He will aggregate a total of 756 GCTs during his term of imprisonment. Gov't's Resp., Ex. 2 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶ 6. The application of these GCTs to his full-term expiration date will result in a projected release date via GCTs of October 21, 2032.

Chavez was also not eligible to earn FTCs for participating in Evidence Based Recidivism Reduction (EBRR) programs and Productive Activities (PAs) while in official detention before his sentencing on August 30, 2022. 18 U.S.C. § 3632(d)(4)(B) (explaining an inmate may not earn FTCs "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)."); *Id.* § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). Thus, he was ineligible to earn FTCs until (1) he was sentenced, and (2) in custody awaiting transportation to his BOP designated facility. He arrived at FCI La Tuna on November 15, 2022. Gov't's Resp., Ex. 2 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶ 15. He began accruing FTCs immediately upon his arrival. As of November 21, 2025, Chavez had earned 510 FTCs. *Id.* at ¶ 16. In accordance with BOP policy, the maximum number of 365 FTCs were applied toward his early transfer to supervised release. With the application of these FTCs, Chavez's release date was modified from October 21, 2032, to October 22, 2031.

The Second Chance Act authorizes the Bureau of Prisons (BOP) to consider, to the extent practicable, placing inmates nearing the end of their sentences in pre-release community confinement. 18 U.S.C. § 3624(c). Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. It does not create any additional credits.

Moreover, the BOP is responsible for designating "the place of the prisoner's imprisonment." *Id.* § 3621(b). Consequently, the BOP—not a court—is the proper place to direct a

request for placement in a residential reentry center or in home detention. *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")). Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241." *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)). As a result, a claim regarding pre-release custody in a residential reentry center or home confinement is not a cognizable habeas claim. *Mosley v. Reiser*, No. 3:21-cv-394-TSL-RPM, 2022 WL 16572029, at *2 (S.D. Miss. Nov. 1, 2022), *aff'd*, No. 22-60625, 2023 WL 3947169 (5th Cir. June 12, 2023).

In summary, Chavez does not explain how the BOP erred in its calculation of his projected release date. And his argument that he is entitled to Second Chance Act "credits" is based on the erroneous premise that such credits exist.

## CONCLUSIONS AND ORDERS

The Court concludes that Chaves has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating his projected release date. The Court accordingly enters the following orders:

**IT IS ORDERED** that Petitioner Ignacio Chavez's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED**.

**SIGNED this 24th day of April, 2026.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE